**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

CASE NO. 0:14-CV-62567-KMM

TRACY SANBORN
on behalf of herself and all others similarly
situated,
                 Plaintiffs,

vs.

NISSAN NORTH AMERICA INC.,
NISSAN MOTOR COMPANY, LTD.,
              Defendants.
_____/

**NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT AND**
**SUPPORTING MEMORANDUM OF LAW**

Defendant, Nissan North America Inc. ("NNA"), moves this Court, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the entry of an Order dismissing the

Amended Class Action Complaint ("Complaint") filed herein by the Plaintiffs, Tracy Sanborn

and Louis Lucrezia, on behalf of themselves and all others similarly situated ("Plaintiffs"), and,

in support thereof, submits the following Memorandum of Law:

**INTRODUCTION**

Stripped to its essentials, the Complaint seeks to hold NNA liable for failing to inform

Plaintiffs Sanborn and Lucrezia of an alleged defect in the materials used in the dashboard of the

2009 Nissan Altima that Ms. Sanborn purchased second-hand, and in the dashboard of the 2008

Altima Mr. Lucrezia leased, then purchased (collectively, "Plaintiffs' Vehicles" or "Vehicles").

Based on NNA's alleged "failure to disclose," Plaintiffs bring this putative class action on behalf

of themselves and all other 2008-2009 Nissan Altima purchasers, along with purchasers of the

2007 Nissan Altima, the 2003-2008 Infiniti FX35 and FX45, the 2006-2008 Infiniti G35, the 2006-2008 Infiniti G37, and the 2008-2009 Infiniti M35.

As a threshold matter, it is black-letter law in the Eleventh Circuit that Plaintiffs lack standing to bring claims related to vehicles that they have not purchased.  The Complaint must be dismissed to the extent it is based on the sale of any vehicle make, model, or model year other than Plaintiffs' Vehicles, the 2008 and 2009 Nissan Altima.

Moreover, Plaintiffs cannot plead facts to show that NNA had *actual* knowledge of any dash defect in Plaintiffs' Vehicles at the time the vehicles were first sold to the public or, for that matter, even when Plaintiff Sanborn later purchased her Vehicle on the secondary market.  To the contrary, the first concern to which Plaintiffs can point related to the Altima dash occurred several years after the initial sale of the Vehicles — hardly the kind of showing necessary to impute the required knowledge to the manufacturer at the time of sale.  Indeed, at least with respect to an item like an automobile that has thousands of parts that are exposed to an outdoor environment, it is certainly possible, and even generally understood, that subsequent events will show certain parts perform worse than others.  Plaintiffs claim that NNA *should have known* of the alleged dash melting defect based on a distinctly different alleged defect in the dashboard materials of an entirely distinct brand, model, and model year of vehicles: the 2003-2008 Infiniti FX35 and FX45 luxury crossover SUVs ("FX Vehicles").  This circuitous pleading is Plaintiffs' attempt to do an end-run around the critical gaps in their case and create the appearance of deception where none exists.

The implications of Plaintiffs' theory do not withstand scrutiny.  Under their approach, if a defect is found in a component of Product A, the manufacturer is responsible for anticipating and disclosing a different defect on the model lines for Products B, C, and D, even if the manufacturer has *no actual knowledge* at the time of sale of any defects that later emerge in

Products B, C, or D.  This is not the law in Florida, and Plaintiffs' theory does not comport with the expectations of reasonable consumers.

Count One of the Complaint, which alleges that NNA has violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, *et. seq.* by "failing to disclose, at the point of sale" the alleged defect in the dashes of Plaintiffs' Vehicles, should be dismissed for failure to state a claim.  Plaintiffs do not articulate the facts of any deceptive practice on the part of NNA and do not plausibly allege NNA's knowledge of the alleged defect in Plaintiffs' Vehicles.  Plaintiffs' allegations lack the particularity required by Federal Rule of Civil Procedure 9(b) for claims based in fraud, and fall short even of the more liberal requirements of Rule 8(a).

Count Two reiterates the allegations of Count One, but labels the claim "unjust enrichment."  This redundant, "shotgun" pleading should be dismissed.  Not only do Plaintiffs fail to allege any actual inequity related to the purchase of the Vehicles, but Florida law is clear that an unjust enrichment claim may be maintained only where a plaintiff lacks any other adequate legal remedy.  Because it merely re-states the allegations of Count One without setting forth a distinct, necessary cause of action, Count Two should be dismissed.

## FACTUAL BACKGROUND

I.     PLAINTIFF SANBORN'S ALTIMA PURCHASE.

Plaintiff Sanborn claims that, in 2011, she purchased a used 2009 model year Nissan Altima from a Nissan dealer in Florida.  Compl. ¶ 34.  She claims that she purchased this vehicle "with her sister."  *Id.*  She does not allege that NNA, either directly or through the dealer, made any representations — much less misrepresentations — to her about the dashboard of the 2009 Altima.  Ms. Sanborn claims that she researched "current," *i.e.*, 2011 model year vehicles on the Nissan USA website prior to purchase, as well as "information about certified pre-owned cars"

(no make or model specified) on the dealer website. *Id.* At the dealership, she looked at "window stickers on several cars for sale there" and "reviewed brochures about the Nissan Altima." *Id.* However, she does not allege that any of these materials were particular to the 2009 Altima, and does not allege what she was told at the time of purchase, what warranty she received, if any, or on what marketing materials she actually relied. *See* Compl. ¶¶ 34-37. The Complaint suggests that Ms. Sanborn (with her sister) is still the owner of the vehicle. *See* Compl. ¶ 37.

Ms. Sanborn states that, sometime in 2014 — three years after she purchased the vehicle and five years after its original sale — the dashboard of the vehicle "began to melt" and would "stick" and "tear" when she attempted to cover it, but the photograph she attaches is, at best, inconclusive. Compl. ¶¶ 15, 35. She claims that the "melting" has resulted in "glare" when the sun shines on the windshield, and that the dashboard "has released noxious fumes." Compl. ¶¶ 35, 37. She claims she attempted to have the dash repaired for free outside of the warranty period, Compl. ¶ 36, but her causes of action are unconcerned with any post-sale conduct by either the dealership or NNA. *See* Compl. ¶¶ 51-64.

## II.     PLAINTIFF LUCREZIA'S ALTIMA PURCHASE.

Plaintiff Lucrezia claims that he leased a new 2008 Nissan Altima in 2008, then purchased it from the dealership one year later. Compl. ¶ 38. Like Ms. Sanborn, Mr. Lucrezia does not allege that NNA made any representations or misrepresentations to him about the dashboard of the 2009 Altima. Instead, he claims that he generally "researched Nissan vehicles on the Nissan USA website" and "looked at the window stickers on several cars on display" at the dealership (no make or model specified). *Id.* Though Mr. Lucrezia claims that none of these materials "disclosed . . . that the dashboard would not withstand exposure to sunlight," he does not allege that any of these materials related to the 2008 Nissan Altima. Moreover, he does not

4

allege what he was actually told at the time of purchase, what warranty he received, if any, or on what marketing materials he relied. *See* Compl. ¶¶ 38-41.

Mr. Lucrezia states that, "around May 2014," the dashboard of his vehicle became "sticky" and "glossy," resulting in "significant glare" that "impairs his vision." Compl. ¶¶ 39, 41. He does not, however, attach any photographs of the dash. He claims to have attempted to have the dash repaired for free, Compl. ¶ 40, but his causes of action do not involve any post-sale conduct by NNA. *See* Compl. ¶¶ 51-64.

III.     OTHER CUSTOMER COMPLAINTS.

The thin allegations above are the extent of Plaintiffs' factual statements regarding their Vehicles. The remainder of the Complaint is a laundry list of customer complaints by *other* Nissan and Infiniti vehicle purchasers. *See* Compl. ¶¶ 15-22. These complaints were found on Facebook and on the National Highway Traffic Safety Administration ("NHTSA") website. Indeed, many of these unsupported complaints involve vehicles other than the 2008-2009 Nissan Altima. *See* Compl. ¶ 22. Some customer complaints include photographs of alleged melting and glare on the dashboards of alleged 2007-2009 Nissan Altimas — but only Ms. Sanborn incorporates a photograph of her own vehicle. *See* Compl. ¶¶ 14-17. Nearly all of the photographs and complaints are dated 2014; there is one exception dated 2012. ¶¶ 15, 17, 20-22.

Most importantly, each of these customer complaints *post-dates* when NNA distributed the 2008 and 2009 models, as well as the dates of Plaintiffs' vehicle purchases in 2009 and 2011 — a tacit admission that there is no evidence that Nissan or anyone else had knowledge *prior to* Plaintiffs' purchases. Apparently to get around this fatal problem, Plaintiffs reference a warranty extension that NNA issued in 2010 for the dashboard of model year 2003 to 2008 Infiniti FX Vehicles to address an issue *that does not involve the melting of a dashboard.* Crucially, Plaintiffs do not (and cannot, in good faith) allege that the dashboards or dashboard materials

found in the FX Vehicles are the same as those used in the other vehicles included in the Complaint.  *See* Compl. ¶¶ 26-27.

## **ARGUMENT**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses challenges based on a plaintiff's lack of standing.  *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction . . . ." (internal quotation marks omitted)).  Where a plaintiff has failed to allege a sufficient factual basis for standing, the complaint is properly dismissed.  *See id.* at 1235.  As demonstrated below, Plaintiffs have standing with regard to *only two* of the *twenty-three* vehicle models and model years listed in the Complaint.  Plaintiffs' claims, as they relate to all other vehicles, must be dismissed.

In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  This "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 678-79.

Here, Plaintiffs have not satisfied — and, in good faith, cannot satisfy — the requirement of pleading "more than a sheer possibility" of misconduct, much less pleading with particularity their claims sounding in fraud.  Styling their claim as a putative class action and trotting out a parade of anonymous customer complaints does not excuse each Plaintiff from the obligation to plead the facts of his or her own case.  *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (affirming dismissal of purported class action because, even though plaintiffs' factual allegations were detailed, they did not allow court plausibly to infer wrongdoing by defendants).

I.      PLAINTIFFS HAVE STANDING ONLY WITH REGARD TO THE 2008 AND 2009 ALTIMA.

Standing is a constitutional requirement for any federal plaintiff; it is the requirement that a plaintiff has suffered an injury causally connected to the actions of the defendant, which may be redressed by a judgment in the plaintiff's favor.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  As a threshold matter, Plaintiffs lack standing to pursue any claims involving Nissan or Infiniti vehicles they did not purchase.

To establish Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy as to warrant . . . invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis in original) (internal quotation marks omitted).  The fact that a suit is "brought as a class action does not alter [Plaintiffs] obligation to show that [they] individually satisfied the constitutional requirements of standing."  *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1282 n.20 (11th Cir. 2001).  Recent decisions have confirmed that, as a matter of black-letter law, "in the Eleventh Circuit, a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which [s]he did not purchase.'"  *Garcia v. Kashi Co.*, --- F. Supp. 2d ----, 2014 WL 4392163, at *27 (S.D. Fla. 2014)

(quoting *Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013)).

In *Garcia*, the complaint alleged an FDUTPA violation based on the labeling of more than 80 products, of which the named plaintiffs had purchased only eight. 2014 WL 4392163, at *25. The court considered whether, assuming the products were "similar," the putative class representatives could plead injury-in-fact for products they never bought. *Id.* at *26. In light of Eleventh Circuit authority requiring that "at least one named class representative has Article III standing to raise each [claim]," *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000), the court followed *Toback*, 2013 WL 5206103, at *4-5, in holding that even the purchase of a "substantially similar product" is insufficient to confer standing to challenge a non-purchased product, 2014 WL 4392163, at *26. Accordingly, plaintiffs' FDUTPA claims were limited to the eight purchased products. *Id.* at *27.

Another court in the Southern District of Florida reached the identical conclusion in a putative FDUTPA class action seeking to hold a food product manufacturer liable for alleged misrepresentations on the labels of 60 different products containing evaporated cane juice. *Reilly v. Amy's Kitchen, Inc.*, No. 13-21525, 2013 WL 9638985, at *2 (S.D. Fla. Dec. 9, 2013). Plaintiff pled that she had purchased only three of these products. Citing *Prado-Steiman*'s requirement that the "standing of a named plaintiff . . . be established on a claim-by-claim basis within the Eleventh Circuit," the court dismissed the complaint "to the extent it [brought] claims related to products [p]laintiff did not purchase." *Id.* (quoting *Prado-Steiman*, 221 F.3d at 1279-80).

Here, Plaintiffs allege that, respectively, they purchased 2008 and 2009 model year Altimas, but they do not allege that they have ever purchased any of the other 21 vehicles named in the Complaint. Compl. ¶¶ 10, 34, 38. As such, they have no personal stake, no injury-in-fact,

and thus no standing with respect to the claims regarding any vehicles *but* the 2008 and 2009 model year Nissan Altima.  All other considerations aside, both Counts One and Two of the Complaint must be dismissed with respect to all vehicles and model years for lack of standing, the 2008 and 2009 Nissan Altima excepted.

II.      COUNT I OF THE COMPLAINT IS SUBJECT TO RULE 9(b)'S HEIGHTENED PLEADING STANDARD.

Federal Rule of Civil Procedure 9(b) states unequivocally that "[i]n alleging fraud . . . a party must state *with particularity* the circumstances constituting fraud . . . ." (emphasis added). Common law fraud, under Florida law, entails a false statement or omission of material fact, known by the defendant to be false, made for the purpose of inducing reasonable reliance on the part of the plaintiff, and resulting in damages.  *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011).  Where an alleged violation of the FDUTPA is based on a misrepresentation, omission, or failure to disclose, such a claim sounds in fraud and is subject to Rule 9(b)'s "particularity" requirement.  *See, e.g.*, *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (finding that FDUTPA claims based on misrepresentations and omissions sound in fraud); *Llado-Carreno v. Guidant Corp.*, No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (finding that plaintiff's deception-based FDUTPA claim sounded in fraud).  That a plaintiff does not label their claim "fraud" is of no import:

> Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The rule does not state that it applies only to *claims* for fraud; it applies to *allegations* of fraud.

*Perret*, 846 F. Supp. 2d at 1333 (emphases added); *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 955 F. Supp. 2d 1311, 1323 n.8 (S.D. Fla. 2013) (noting that "most courts have found that Rule 9(b) applies to claims brought under states'

consumer fraud statutes")[1]; *Sunoptic Techs., LLC v. Integra Luxtec, Inc*., No. 08-878, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) (applying Rule 9(b) to a FDUTPA claim sounding in fraud); *Siever v. BWGaskets, Inc*., No. 08-1388, 2009 WL 528624, at *3 n.1 (M.D. Fla. Mar. 2, 2009) (stating that Rule 9(b) applies to FDUTPA claims "grounded in fraud") (citation omitted); *Stires v. Carnival Corp*., 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (finding that allegations of fraud involving a FDUTPA claim triggered heightened pleading standards under Rule 9(b)).

Here, it is inarguable that Plaintiffs' FDUTPA non-disclosure claim sounds in fraud; they allege that NNA failed to disclose (Compl. ¶ 55) a known dashboard defect (Compl. ¶ 23) of material significance, causing her damages (Compl. ¶ 56). That the FDUTPA offers an alternative, statutory cause of action does not permit Plaintiffs to evade the requirements of Rule 9(b). Consequently, to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must state "with particularity the circumstances constituting" the alleged conduct that forms the basis of their misrepresentation claim.

## III.   PLAINTIFFS DO NOT STATE A CLAIM FOR VIOLATION OF THE FDUTPA.

In conclusory fashion, Plaintiffs allege that NNA violated the FDUTPA because it "actively concealed the defect" and "did not tell customers . . . that the dashboards would melt and crack." Compl. ¶ 28. Plaintiffs contend that this "offends public policy and is unethical, unscrupulous, and substantially injurious to consumers." Compl. ¶ 55. Under either the particularity standard of Rule 9(b) or the plausibility standard of Rule 8(a), these generic allegations are insufficient to state a FDUTPA claim. Plaintiffs fail to allege any actionable statements or deceptive conduct on the part on NNA, fail to plausibly allege that NNA had notice of any alleged defect, and fail to sufficiently plead causation or damages. To simply label

---

[1] *But see Marty v. Anheuser-Busch Co., LLC*, --- F. Supp. 2d ----, 2014 WL 4388415, at *2 (S.D. Fla. Sept. 5, 2014) (acknowledging "some disagreement in the case law").

NNA's sale of the subject vehicles as "unethical" or "unscrupulous" is insufficient under any pleading standard.

### A.   Plaintiffs do not allege with particularity any deceptive conduct on the part of NNA.

Plaintiffs' twenty page Complaint devotes a scant seven sentences to the description of "the circumstances constituting" the alleged fraud:  Plaintiffs describe in vague terms how they performed general internet research on "Nissan models" and looked at the "window stickers" of unspecified vehicles on dealership lots.  Crucially, none of their allegations specify the make and model year of the vehicles Plaintiffs researched online or examined on the lot, with the exception of a single claim that "as part of the sale transaction [Ms. Sanborn] received brochures about the Nissan Altima."  Compl. ¶¶ 34, 38.  Even here, however, Ms. Sanborn does not specify whether these "brochures" related to the 2009 model she bought, or the new 2011 model year on sale at the time of her purchase.  *See* Compl. ¶ 34.  Pleading that is this imprecise and ambiguous with respect to key facts is insufficient under any standard.  The Eleventh Circuit has held that proper pleading under Rule 9(b) must set forth each of the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).  In the FDUTPA context, this means a plaintiff must plead with specificity "what representations [he or she] saw, when he [or she] saw them, or where he [or she] saw them."  *Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1343 n.9 (S.D. Fla. 2011).  Vague allegations as to the defendant's representations are subject to dismissal.  *Id.*

Here, Plaintiffs are not merely vague — rather, they entirely neglect to include the necessary factual allegations as to which, if any, of NNA's advertising and promotional materials were deceptive or omitted notice of the alleged defect. To claim to have "looked through the Nissan USA website" (Compl. ¶ 34) or have "looked at the windows stickers on several cars" (Compl. ¶ 38) does not amount to setting forth "precisely what statements were made in what documents." *Ziemba*, 256 F.3d at 1202. Indeed, Plaintiffs fail to allege any of these specifics regarding the content of these alleged communications with NNA. They do not plead any actual omissions, the "time and place . . . and the person responsible for . . . not making" the disclosures, or the "manner in which they [were] misled." *Cf. id.*. Instead, they each seek to rely on the simplistic formula: "I browsed the internet, I bought a car, I think it has a defect, so NNA fraudulently violated the FDUTPA." Rule 9(b), however, forbids this manner of pleading (*i.e.*, one that fails to "alert[] defendants to the precise misconduct with which they are charged" and subjects defendants to "spurious charges of immoral and fraudulent behavior"). *Brooks*, 116 F.3d at 1370-71. Because Plaintiffs' misrepresentation and omission allegations are not merely vague, but are in fact nonexistent, Count One should be dismissed.

**B.      Even under Rule 8(a), Plaintiffs' "formulaic recitation of the elements" does not plausibly allege a violation of the FDUTPA.**

As set forth above, Plaintiffs' allegations must satisfy the heightened pleading standard under Rule 9(b). However, Plaintiffs' conclusory allegations warrant dismissal even if analyzed under Rule 8(a). The FDUTPA provides a cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). To state a claim under the FDUTPA, however, Plaintiffs must not only plead that the conduct complained of was unfair or deceptive, but that they were actually "aggrieved" by the unfair or deceptive act. Fla. Stat. § 501.211(1)–(2) ("In

any action brought by a person who has suffered a loss as a result of a violation of [the FDUTPA], such person may recover actual damages . . . ."); *Gastaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009) (a plaintiff asserting a FDUTPA claim must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); *Haun v. Don Mealey Imps., Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) (under the FDUPTA, "conclusory statement of 'direct and proximate result' do not state an element"). Mere "labeling" is insufficient. *See Twombly*, 550 U.S. at 555 (explaining that a "formulaic recitation of the elements of a cause of action will not do").

　　1.　　Deceptive practices.

　　To state a claim based on a deceptive practice under the FDUTPA, a plaintiff must show that the practice about which the plaintiff complains is likely to deceive a consumer acting reasonably in the same circumstances. *Davis v. Powertel, Inc.,* 776 So. 2d 971, 974 (Fla. 1st DCA 2000). The Florida Supreme Court has explained that "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotation marks and citation omitted). This standard requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3rd DCA 2000). The sale of a defective product, without more, is not a deceptive trade practice. Indeed, as courts in this District have explained, even under much more extreme circumstances involving the sale of a broken-down car, it is not a violation of the FDUTPA to sell a defective product so long as the seller made no material misrepresentations. *See Jovine*, 795 F. Supp. 2d at 1343 ("Ostensibly, it would not be a violation of FDUTPA to sell

a broken-down car . . . provided the seller did not misrepresent the items' qualities to the [buyer].").

Plaintiffs' Complaint, however, does not allege facts sufficient to show deceptive conduct by NNA. In fact, they allege merely that after visiting the NNA website, each purchased a Nissan Altima, one as a lease and one as a used vehicle. However, Plaintiffs did not purchase their Vehicles from NNA, but from car dealerships. Thus, not only do Plaintiffs fail to plead what they were actually told at the time of purchase by their respective dealerships, but, critically, they do not explain how NNA could have made any misrepresentations to them when *NNA did not sell them their Vehicles. See* Compl. ¶¶ 34, 38. This cannot, under even the most liberal pleading standard, be read to state a claim for deceptive conduct under the FDUTPA.[2] Generic statements about what NNA may have done generally, *e.g.*, "sold the vehicles without first telling consumers that [the dashboards] do not withstand exposure to sunlight" (Compl. ¶ 1) or "knew or should have known that the dashboards would melt and crack" (Compl. ¶ 28), are "mere labels" and must be deemed insufficient. Indeed, as explained below, not only are the allegations in the Complaint insufficient, but the most reasonable inference from them is that NNA did not have knowledge of any dash melting issue, much less a widespread dash melting issue, at the time it distributed Plaintiffs' Vehicles in 2008 and 2009.

Essential to Plaintiffs' FDUTPA claim is this allegation that NNA had knowledge of the alleged dashboard melting in the 2008 and 2009 Nissan Altima prior to the time that NNA manufactured and distributed Plaintiffs' Vehicles. Without such knowledge, Plaintiffs cannot establish the essential claim that NNA failed to disclose a *known* defect. *See Jovine*, 795 F. Supp. 2d at 1343 (selling a defective product does not violate the FDUTPA in the absence of a

---

[2] Moreover, because Plaintiffs cannot plead that NNA sold them the Vehicles, they fail to plead causation or damages under the FDUTPA. *See* Section III.B.2, *infra*.

14

misrepresentation).  Thus, the bulk of the Complaint is dedicated to an attempt to show that NNA had knowledge of the defect based on anonymous customer complaints posted on Facebook and the NHTSA website.  *See* Compl. ¶¶ 13-20.  But even the most cursory examination of those allegations exposes the futility of Plaintiffs' efforts.

Plaintiffs' claims are that by the time Mr. Lucrezia, in 2009, purchased outright his leased 2008 Altima and that by the time Ms. Sanborn, in 2011, purchased her 2009 Altima as a used vehicle (Compl. ¶¶ 34, 38), NNA "knew or should have known" about the defect and "fail[ed] to disclose" it (Compl. ¶¶ 28, 55).  The relevant time period, of course, under the FDUTPA is when NNA distributed the 2008 and 2009 model year vehicle in 2008 and 2009, respectively, but even if it were 2011, the result is the same.  Here, of the 2008 and 2009 Nissan Altima complaints Plaintiff lists, the earliest is dated December 26, 2012 — almost *two years* after Ms. Sanbron purchased her vehicle, almost *four* after Mr. Lucrezia purchased his, and *five years* after NNA first distributed the Vehicles.  *See* Compl. ¶ 22.  Taking into account all vehicles and vehicle model years Plaintiffs list, the earliest report of any dash melting on the NHTSA website or Nissan's Facebook page gives an incident date of August 2012.  *See id.*  Based on these allegations, Plaintiffs offer no plausible basis to infer that NNA had learned of any dashboard melting, much less widespread melting, by the time Ms. Sanborn purchased her vehicle in 2011, much less at the time Mr. Lucrezia purchased his, two years earlier.  Indeed, the Complaint fails to plead *any* customer complaints for several of the models and model years sought to be included in the class, such as the 2006-07 Infiniti M35, 2009 Infiniti G37, 2006 Infiniti G35, and all model years of the FX Vehicles.  *See id.*  Without plausible allegations of such knowledge, there can be no viable omission claim.

Apparently to address this gap in the pleadings, Plaintiffs reference a warranty extension that NNA issued in 2010 for a dashboard issue involving model year 2003 to 2008 FX Vehicles

that has nothing to do with melting.  Rather, this warranty extension addressed an issue where the dash could bubble up (*i.e.*, create air pockets under the dashboard skin) — a condition that is almost the opposite of melting.  *See* Ex. A (FX Vehicles dash warranty Preliminary Announcement, Claims Information Bulletin, and Owner Letter describing issue as "bubbling").[3] Notably, Plaintiffs do not plead that the dashboard materials are identical.  *See* Compl. ¶ 27.

Nevertheless, though this defect never involved the Nissan Altima or its dashboard and was the subject of its own warranty extension program in 2010, *see* Ex. A, Plaintiffs argue that the FX Vehicles' "bubbling" should be imputed to NNA as future knowledge of *all* dashboard issues (including "melting"), in *all* vehicles (including the Nissan Altima and various Infiniti vehicles).  They ask this Court to adopt the wholly novel principle that once a product manufacturer has knowledge of one defect, in one of its products, it can be deemed to have knowledge of all other defects in all other products in the future, and can be held liable for intentionally deceptive conduct based on its failure to disclose unknown and un-manifested defects.  This is not the law under the FDUTPA or any other relevant doctrine; Plaintiffs position is sufficient, standing alone, to warrant the dismissal of the FDUPTA claim.

2.    Causation and damages.

To plead a FDUTPA violation, Plaintiffs must establish a causal link between some action by NNA and their alleged damages.  *See*, *e.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2007) (granting motion to dismiss FDUTPA claim because the

_____

[3] On a motion to dismiss, a court properly considers documents beyond the face of the complaint where "[1] a plaintiff refers to a document in its complaint, [2] the document is central to [her] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss."  *Fuller v. SunTrust Banks*, 744 F.3d 685, 695-96 (11th Cir. 2014).  Here, Plaintiffs explicitly refer to and rely upon the FX Vehicles "bubbling" warranty extension in their attempt to plead NNA's knowledge of the alleged "melting" defect in Plaintiffs' Vehicles at the time of its sale, and there is no basis for dispute as to the contents of the warranty extension documents attached as Exhibit A.

plaintiffs "cannot claim to have suffered any damage from the allegedly misleading statements about Lipitor's coronary benefits").  Damages must also be pled, as "[f]ailure to state facts which indicate how the alleged deceptive acts or unfair practices caused damage to Plaintiffs can result in dismissal of Plaintiffs' FDUTPA claim."  *Lawrie v. The Ginn Cos., LLC*, No. 09-446, 2010 WL 3746725, at *6 n.26 (M.D. Fla. Sept. 21, 2010).

Here, because Plaintiffs do not plead any deceptive or unfair conduct on the part of NNA, they cannot establish how NNA caused them any harm.  Moreover, as Ms. Sanborn is a secondary purchaser of a used vehicle, she fails to establish a causal connection between NNA's conduct in manufacturing and distributing the vehicle and her purchase from a dealer two years later.  Finally, Plaintiffs fail to plausibly allege that NNA obtained anything as a result of its alleged non-disclosure.  *See Ziemba*, 256 F.3d at 1202 (explaining that the plaintiff must allege what the defendant obtained as a result of the fraud); *see also In re Horizon Organic Milk Plus Dha Omega–3 Marketing And Sales Practice Litigation*, 955 F. Supp. 2d at 1321 (requiring a claim under a state consumer protection statute to adequately allege what the defendant obtained as a result of the alleged fraud).  Plaintiffs have failed to plead causation and damages for their FDUTPA claim with even the minimum level of factual basis and plausibility.  Accordingly, Count One must be dismissed.

IV.    PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs' unjust enrichment claim is a mere tack-on; identical to Count One's FDUTPA claim, Count Two states that Plaintiffs paid more than they otherwise would have for her vehicle due to NNA's non-disclosure of the alleged defect.  Compl. ¶¶ 58-64.  "It is well settled in Florida that unjust enrichment is . . . not available where there is an adequate legal remedy," *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla.

2005), and courts routinely dismiss unjust enrichment claims that merely restate a FDUTPA claim, even where the FDUTPA claim is itself dismissed.

Florida law provides a wide variety of legal remedies for consumers who — unlike the case here — have been deceived as to the quality of a product and have consequently overpaid. *See Jovine*, 795 F. Supp. 2d at 1341-42 (citing *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim premised on misrepresentations about a product's qualities)).   An unjust enrichment claim cannot be used as a fallback to Plaintiffs' insufficient pleading of the FDUTPA claim.   Accordingly, because Plaintiffs have adequate legal remedies, Count Two should be dismissed in its entirety.

Finally, as discussed above, Plaintiffs have not alleged how NNA benefitted from the alleged non-disclosure.   In particular, they have failed to plead what benefit NNA obtained from her purchase of a used vehicle.   Even if unjust enrichment were a proper cause of action in this case, which it is not, Plaintiffs have failed to state their claim.

V.       THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE.

While a court should "give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), it is "by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).   Reasons sufficient to deny leave include, but are not limited to, undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, and futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).   The presence of any one of these factors is sufficient to justify denying leave. *See Hays v. United States*, 16 Cl. Ct. 770, 772 (1989) ("[I]t is evident that the [*Foman*] criteria are in the disjunctive, *i.e.,* satisfaction of one is sufficient to deny the motion"); *see also Jones v. Childers*, 18 F.3d 899, 909 (11th Cir. 1994) (stating that *Foman* lists "factors which a district court, in its exercise of discretion, may consider as justifying the denial of leave to amend").

Here, Plaintiffs' Complaint is not an inartfully drafted but otherwise meritorious set of claims.  Rather, it is a sophisticated attempt to, on the one hand, obscure NNA's lack of knowledge of any alleged dashboard defect in Plaintiffs' Vehicles at the time of purchase in 2011 and, on the other, impute knowledge of the as-yet-unmanifested defect to NNA based on a distinct and unrelated issue in the FX Vehicles.  Re-pleading the case will not change the fundamental flaws that doom Plaintiffs' claims from the start.  The Complaint should be dismissed in its entirety with prejudice.

## CONCLUSION

WHEREFORE, NNA respectfully requests the Court enter an Order dismissing the Complaint in its entirety with prejudice.

Dated: February 9, 2015

Respectfully submitted,
Seipp, Flick & Hosley, LLP

*/s/ John C. Seipp, Jr.*                          .
John C. Seipp, Jr. (Florida Bar No. 0289264)
Donald A. Blackwell (Florida Bar No. 370967)
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Phone:  305-995-5600; Fax: 305-995-6090

JENNER & BLOCK LLP

Peter J. Brennan (*pro hac vice*)
pbrennan@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone: 312-222-9350; Fax: 312-527-0484

Daniel Welsh (*pro hac vice*)
dwelsh@jenner.com
633 W. 5th Street, Suite 3600
Los Angeles, CA 90071
Phone:  213-239-5100; Fax:  213-239-5199

Counsel for Defendants