# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TRACY SANBORN and LOUIS LUCREZIA et al., <br>　　　　Plaintiff, <br><br>v. <br><br>**NISSAN NORTH AMERICA INC.,** <br><br>　　　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 0:14-CV-62567-KMM


**PROPOSED CLASS ACTION
SETTLEMENT AGREEMENT**

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

**THIS SETTLEMENT AGREEMENT AND RELEASE** is entered into by and between Plaintiffs Tracy Sanborn and Louis Lucrezia, both individually and as representatives of the Settlement Class described herein, on the one hand, and Defendant, Nissan North America, Inc. ("NNA" or "Nissan"), on the other, and is made and entered into, pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to the Court's approval.  This Agreement is intended to forever settle and compromise any and all claims, disputes and controversies, of any kind or nature whatsoever, whether known or unknown, which were raised or could have been raised, between or among the Parties, which in any way arise out of or relate to the allegations and claims or the facts underlying the allegations and claims stated in  *Sanborn v. Nissan North America, Inc.*, Case No. 04-cv-62567 KMM, currently pending in the United States District Court for the Southern District of Florida.  This Agreement, including the limitations set forth in this Agreement, settles the claims asserted in the above-captioned case between Ms. Sanborn, Mr. Lucrezia, and the Settlement Class, on the one hand, and NNA on the other.

## SECTION 1
## <u>FACTUAL BACKGROUND</u>

**1.01**  On November 11, 2014, Plaintiff Tracy Sanborn commenced this Litigation by filing a Class Action Complaint.  On January 26, 2015, Plaintiff Louis Lucrezia joined this Litigation by filing an Amended Class Action Complaint (the "Amended Complaint").  As more fully set forth in the Amended Complaint, Plaintiff Tracy Sanborn and Plaintiff Louis Lucrezia ("Plaintiffs") alleged that NNA installed dashboards, which are referred to more formally and interchangeably as instrument panels, "that do not withstand exposure to sunlight and that melt."  (Amended Complaint ¶ 1.)  In the Amended Complaint, Plaintiffs brought two causes of action against NNA: (1) violation of the Florida Deceptive and Unfair Trade Practices Act, and (2) unjust enrichment.  NNA denies that it is

liable to Plaintiffs or the Settlement Class, and denies that certification of a class would be proper absent a settlement.

**1.02**   The Parties engaged in extensive discovery including reviewing voluminous documents and taking numerous depositions.   The Parties made numerous further filings with the Court.   In those filings, Plaintiffs asserted that the Class Vehicles had a dashboard with a plastic skin material made from a powder slush-molded thermoplastic polyurethane that was not able to withstand prolonged exposure to the heat and humidity typical of Florida and that the skin material could either crack or degrade to such an extent that it appears to melt.   Plaintiffs further asserted in those filings that NNA failed to properly formulate or test the dashboard material before installing it in Class Vehicles and that, as a result, the material was not properly formulated to withstand the high levels of heat and humidity typically encountered in Florida.   Again, NNA denies that it is liable to Plaintiffs or the Settlement Class, and denies that certification of a class would be proper absent a settlement.

**1.03**   Pursuant to the Court's order, the Parties participated in a settlement conference in front of Mediator Michael Siboni on Thursday, April 21, 2016. Since then the Parties have participated in extensive diligent and good faith negotiations through the Mediator, finally reaching settlement on the material terms on Thursday, June 30, 2016.   As a result of these negotiations, the Parties agreed to numerous material terms, which are incorporated herein.   At all times, the settlement negotiations have been adversarial, non-collusive, and conducted at arm's-length with the critical assistance of the Mediator.

**1.04**   Class Counsel and Defendant's Counsel have investigated the facts and law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.

**1.05**   The Parties believe this is a fair, reasonable and adequate Agreement and have arrived at this Agreement through arm's-length negotiations, taking into account all relevant factors, both present and potential.

2

**1.06**   NNA has denied, and continues to vigorously deny, any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.   Nevertheless, without admitting or conceding any liability or damages whatsoever, NNA has agreed to settle the Litigation, on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing this Litigation; to avoid the diversion of resources and personnel required by continuing the Litigation; and to put to rest any and all claims that are, or could have been, brought or asserted in this, or any similar, litigation in this Court or any other court or jurisdiction, administrative or governmental body or agency, tribunal, or arbitration panel, which are based upon or arising out of or related in any way, in whole or in part, to any of the facts, circumstances or conduct alleged in this Litigation concerning each Class Member. NNA has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

**1.07**   Class Counsel have analyzed and evaluated the merits of the claims made against NNA in the Litigation, and the impact of this Agreement on Plaintiffs and the Settlement Class.   Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Plaintiffs and the Settlement Class, and/or might result in a recovery which is not as good as the settlement for Plaintiffs and the Settlement Class, and/or might not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Settlement is in the best interests of Plaintiffs and the Settlement Class.

**1.08**   As a result of these and other considerations, the Parties have agreed to settle the Litigation as provided for herein.

## SECTION 2

## **DEFINITIONS**

The following are certain definitions applicable to this Agreement. Definitions contained elsewhere in the body of this Agreement shall also be effective.

**2.01   Agreement.**   The term "Agreement" shall mean and refer to this document evidencing a mutual settlement and release of disputed claims, and it shall also incorporate those other documents contemplated by and/or identified in this Agreement including, but not limited to, the Notice and Claim Form.

**2.02   Claim Form.**   "Claim Form" shall mean and refer to a document that Class Members are required to use in order to make a claim for reimbursement under this Agreement.   The Claim Form shall be made available by downloading it from a designated website, and by any other additional means agreed upon by Plaintiffs' Counsel and Defendant's Counsel.

**2.03   Class Counsel.**   "Class Counsel" shall mean and refer to counsel for Plaintiffs Tracy Sanborn and Louis Lucrezia: Eric H. Gibbs of the Gibbs Law Group,  505 14th Street, Suite 1110, Oakland, California 94612, and Amy Zeman, 3711 Sheridan Avenue, Miami Beach, FL  33140 , also from the Gibbs Law Group, Gregory F. Coleman and Adam Edwards, Greg Coleman Law, PC, 800 South Gay Street, Suite 1100, Knoxville, Tennessee 37929, and John Allen Yanchunis, Sr., Morgan & Morgan, 201 N. Franklin Street, 7th Floor, Tampa, FL  33602.

**2.04   Class Member.**   The term "Class Member" shall mean and refer to any individual member of the Settlement Class.

**2.05   Class Period.**   "Class Period" shall mean and refer to the period commencing with the first purchase or lease by a Class Member of the Model Year 2008 or 2009 Nissan Altima, and ending on April 1, 2017.

**2.06   Class Vehicles.** The term "Class Vehicles" shall mean Model Year 2008 and Model Year 2009 Nissan Altimas.

**2.07   Court.**   The term "Court" shall mean and refer to any Magistrate Judge or District Judge for the United States District Court for the Southern District of Florida who presides over this Litigation or this proposed Agreement.

**2.08   Defendant.**   "Defendant" and "Nissan" and "NNA" shall each mean and refer to Nissan North America, Inc.

**2.09   Defendant's Counsel.**   "Defendant's Counsel" shall mean and refer to John C. Seipp, Jr., and Donald A. Blackwell, Bowman and Brooke LLP, Two Alhambra Plaza, Suite 800, Coral Gables, Florida  33134, Peter J. Brennan, Jenner & Block LLP, 353 North Clark Street, Chicago, Illinois 60654, and Devi Rao, Jenner & Block LLP, 1099 New York Avenue, N.W., Washington, D.C.  20001.

**2.10   Deterioration.**   "Deterioration" refers to the cracking, deforming, melting, bloating, out-of-the-ordinary softening, and stickiness of the skin of a dashboard on the Class Vehicles.

**2.11   Final Approval.**   "Final Approval" shall mean that all of the following have occurred:

> (a)   The Court has entered an Order Granting Final Approval as defined herein; and

> (b)   The Order Granting Final Approval has become "Final" without being modified, amended or reversed in any way.  The Order Granting Final Approval shall be "Final" under the following circumstances:

>> i.   If no rehearing, reconsideration or appellate review has been sought, then the Order Granting Final Approval is final when the time for seeking rehearing or reconsideration and/or appellate review has expired; or

>> ii.   If a rehearing, reconsideration or appellate review has been sought, then the Order Granting Final Approval is final when any and all avenues of rehearing, reconsideration and appellate review have been

exhausted and the time for seeking any such further review has expired.  However, if the only issue subject to rehearing, reconsideration or appellate review concerns a challenge by Class Counsel to the amount of attorneys' fees or expenses awarded by the Court, then the Order Granting Final Approval shall be considered final notwithstanding such a challenge.

**2.12   Final Fairness Hearing.**  The "Final Fairness Hearing" will be a hearing on or after December 8, 2016, at such time, place, and date as set by the Court where, among other things, the Court will provide an opportunity for any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Agreement to be heard, provided that the Class Member complies with the requirements for objecting to this Settlement.

**2.13   Litigation**.  The "Litigation" shall mean and refer to the putative class action entitled *Sanborn v. Nissan North America, Inc.*, Case No. 0:14-cv-62567-KMM, currently pending in the United States District Court for the Southern District of Florida.

**2.14   Notice.**   "Notice" shall mean and refer to the process of notifying Class Members of their rights with respect to this Agreement via direct mail.  The Notice shall be accomplished by mailing a form through the United States Postal Service and also will be made available to Class Members at a designated website. Separately from the Notice defined herein and no later than July 22, 2016, a notice of this Agreement shall be issued by Defendant to the Attorney General of the United States and the Attorneys General in each of the jurisdictions where class members reside under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice").

**2.15   Order Granting Final Approval.**   The "Order Granting Final Approval" shall mean and refer to an order entered by the Court consistent with the terms of the Order Granting Preliminary Approval and approving, among other

things, the terms and conditions of this Agreement, including the manner and timing of providing Notice to the Class and certifying a Settlement Class. The Parties will submit to the Court a Proposed Order Granting Final Approval.

**2.16 Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean and refer to the order entered by the Court preliminarily approving the terms and conditions of this Agreement, including among other things, the conditional certification of the proposed class, the manner and timing of providing Notice to the Class, the time period for opting out and/or filing objections, and the date of the Final Fairness Hearing. The Parties will submit to the Court a proposed Order Granting Preliminary Approval.

**2.17 Parties.** "Parties" shall mean and refer to NNA, as defined herein, and Plaintiffs Tracy Sanborn and Louis Lucrezia, and to the extent that NNA, Plaintiffs and the Settlement Class discharge any of their obligations under this Agreement through agents, the actions of those agents shall be considered the actions of the Parties.

**2.18 Preliminary Approval.** "Preliminary Approval" shall mean and refer to the entry by the Court of the Order Granting Preliminary Approval.

**2.19 Settlement.** The term "Settlement" shall mean and refer to the proposed resolution of this Litigation upon the terms outlined in the Agreement and related documents.

**2.20 Settlement Administrator.** "Settlement Administrator" shall mean and refer to a settlement administrator, if any, who NNA selects with input from Class Counsel to assist with the administration of the Settlement. NNA will be responsible for administering this Settlement but retains the right to use the assistance of a Settlement Administrator in the performance of its duties, such as the mailing of Notice and the delivering of any benefits under this Agreement.

**2.21 Settlement Class.** "Class" or "Settlement Class" shall mean and refer to: All consumers who are residents of, and purchased or leased a new or used 2008 or 2009 Nissan Altima in, the State of Florida on or before April 1, 2017.

The Settlement Class excludes any people or businesses that did not purchase or lease the Class Vehicles as consumers, thereby excluding any automobile dealers of any kind or others who did not lease or purchase the Class Vehicles for ordinary consumer use.   The Settlement Class contemplated by this Agreement is for purposes of settlement only and nothing in this Agreement shall constitute, in this or in any other action or proceeding, an admission by NNA or a finding or evidence that any claims that either were brought or could have been brought in this Litigation are appropriate for class treatment or that any requirement for class certification is otherwise satisfied, nor shall the fact that the Agreement contemplates that the Litigation may be certified for settlement purposes be deemed an admission for any other purpose as to NNA or any other party.

**2.22   Singular/Plural.**   The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

## SECTION 3
## <u>RELIEF</u>

**3.01   Relief, Settlement Notice, Attorneys' Fees and Expenses.**

A.    Upon entry of the Order Granting Preliminary Approval, NNA in conjunction with a Settlement Administrator, if any, will begin Notice to Class Members of their rights with respect to this Agreement.  NNA will provide and pay for Notice to the Class.

B.    NNA shall have the responsibility to prepare and provide CAFA Notices required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), including, but not limited to, the notices to the United States Department of Justice and to the Attorney General of Florida, as specified in 28 U.S.C. § 1715.  Class Counsel will cooperate in the drafting of such CAFA Notices and shall provide NNA with any and all information in its possession necessary for the preparation of the CAFA Notices.

C.    Claims under this Settlement will be administered by NNA in conjunction with a Settlement Administrator, if any.  NNA will pay for the costs of administering the Settlement.

D.    Any Class Member who has paid to have a dashboard on a Class Vehicle replaced by a Nissan dealer or other appropriately certified automotive shop due to Deterioration may seek reimbursement of the reasonable cost of replacement and, if such reimbursement is sought, NNA will provide such reimbursement of the total amount minus $250.00.  For example, if an individual paid $1,500.00 to have his or her dashboard replaced due to Deterioration, NNA will pay that person $1,250.00.  To make a claim for reimbursement, the Class Members must complete, sign, and mail a Claim Form along with reasonable supporting documentation to a designated address.  If the claim is approved by NNA, then the Class Member will be entitled to reimbursement.   If the Claim is not approved, disputes will be resolved using the procedure set out in Section 3.01.F.

E.    For any Class Member whose Class Vehicle has a dashboard with Deterioration, that Class Member may be reimbursed minus $250.00 if that Class Member pays to have the dashboard replaced at a Nissan dealership on or before April 29, 2017.  In the alternative, any Class Member whose Class Vehicle currently has a dashboard with Deterioration may have a Nissan dealership document the Deterioration on or before April 29, 2017, and then, subject to the Parties further discussions and agreement, which will be reflected in the Class Notice and is subject to administrative feasibility and related factors, may obtain a replacement dashboard through a to be determined mechanism, which may include, among other solutions, allowing the Class Member to pay $250.00 to have the dashboard replaced at a Nissan dealership, or, should the Class Member pay to

have the dashboard replaced at a Nissan dealership, require Nissan or the authorized claims administrator to reimburse the Class Member within 14 calendar days of submitting the claim for reimbursement. Claims for reimbursement must be submitted using the same procedures set forth above in paragraph D.

F.   If Nissan denies a request for reimbursement or replacement, the Class Member may then seek input from Class Counsel which will determine whether Class Counsel agrees that the claim was properly denied.  If Class Counsel is of the belief that the claim for a dashboard replacement or reimbursement should have been approved, Class Counsel will discuss with Defendant's Counsel and, if there still remains a disagreement, the Parties will seek the input of Mediator Michael Siboni and, if there is still not a resolution, then the Mediator Michael Siboni will have the power to make a final and binding determination.

G.   To be timely, all Claim Forms must be mailed and postmarked no later than 120 days after the Order Granting Final Approval becomes final or within 60 days of having the dashboard replaced, whichever is later.   Untimely Claim Forms shall not be accepted, and all Class Members who submit untimely Claim Forms shall be deemed to have waived any and all claims under this Settlement.  In all instances, the date appearing on the postmark shall be controlling for determining when a Claim Form was mailed.

H.   At the hearing on the motion for Order Granting Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees up to One Million Three Hundred Thousand Dollars ($1,300,000.00) and service awards up to Five Thousand Dollars ($5,000.00) each for Plaintiffs Tracy Sanborn and Louis Lucrezia, and NNA will not oppose such a request.  In no event shall Class Counsel accept an

attorneys' fees award larger than $1,300,000, or Plaintiffs accept service awards larger than $5,000 each.  In addition, if Class Counsel has submitted appropriate documentation to the Mediator that the Mediator accepts as sufficient, Class Counsel may petition the Court for an award of out-of-pocket costs and expenses up to Three Hundred Forty-Eight Thousand Dollars ($348,000.00) up to the amount approved by the Mediator after reviewing the documentation submitted by Class Counsel.  Fees and costs will be paid by NNA after all possible appeals challenging Settlement have been exhausted. It is not a basis to set aside this Settlement if the Court awards less than the maximum amount of fees, service awards, or expenses that NNA agrees to pay upon Court approval.

**3.02   Payment of Attorneys' Fees and Expenses.**  NNA shall wire transfer monies sufficient to satisfy the court-approved award of attorneys' fees, service awards, and costs to a designated bank account as directed in writing by Eric H. Gibbs of Gibbs Law Group LLP.  The completion of the above referenced wire transfer shall satisfy Defendant's obligation of payment to Class Counsel.  The wire transfer shall occur:

A.     Within forty-five calendar (45) days from the date of Final Approval, provided Class Counsel accepts the Court's award of attorneys' fees, service awards, and costs, does not appeal said award of fees, service awards, and costs, and informs NNA in writing that it will not pursue an appeal of said award; or

B.     In the event that the Court awards Class Counsel attorneys' fees, service awards, and costs in an amount less than $1,300,000, $5,000 each, and $348,000, respectively, and Class Counsel pursues an appeal seeking to recover the difference between the Court's award and those amounts above, NNA shall wire transfer the monies within forty-five (45) calendar days from the date that the amount of the fees,

service awards, and costs awarded has been fully adjudicated, and all avenues of appeal have been exhausted or abandoned (in writing) by Class Counsel.

**SECTION 4**

**APPROVAL AND CLASS NOTICE**

**4.01   Preliminary Approval by the Court.**   The Parties will file this Agreement with the Court and supporting documentation to seek an Order Granting Preliminary Approval.

**4.02   Settlement Class Notice.**   The Notice to the Settlement Class in this Litigation will be provided as set forth above in section 2.14.

**4.03   Claims Procedure and Claims Period.**   Immediately upon Notice being accomplished, Class Members may begin to submit Claim Forms.

**4.04   Opt-outs.**   Any Class Member who wishes to opt-out of the Settlement must send to NNA, or a designated settlement administrator, by a date ordered by the Court, a written and signed statement, entitled "Request for Exclusion," requesting exclusion from the Settlement Class.   The Request for Exclusion must provide the Class Member's full name, address, telephone number, e-mail address (if available), and the Vehicle Identification Number (VIN) of his or her Class Vehicle.   In all instances, the date appearing on the postmark shall be controlling for determining when a Request for Exclusion was mailed.

NNA or a designated settlement administrator shall be responsible for providing a designated location for the purpose of receiving requests for exclusion that are submitted in accordance with this Agreement.   NNA or a designated settlement administrator shall also be responsible for giving notice of the receipt of any such requests for exclusion by promptly providing complete copies to Class Counsel and Defendant's Counsel.

**4.05   Objections to Settlement**.   Any Class Member who wishes to object to the Settlement must send to Class Counsel and Defendant's Counsel, or a designated settlement administrator, by a date ordered by the Court, a written and

12

signed statement entitled "Objection."  To state a valid objection to the Settlement, a Class Member must provide the following information in the written objection: (i) his or her full name, address, telephone number, and e-mail address (if available); (ii) the Vehicle Identification Number (VIN) of his or her Class Vehicle(s); (iii) a statement of the objection(s), including all factual and legal grounds for the position; (iv) copies of any documents he or she wishes to submit in support; (v) the name, address, and telephone number of his or her separate counsel in this matter, if any; and (vi) his or her dated signature.  In addition, the objection must list any other objections submitted by the Class Member, or his or her counsel, to any class action settlements in any court in the United States in the previous five years, or else affirmatively state that no other such objections have been made.   If an objecting Class Member intends to appear, in person or by counsel, at the Final Fairness Hearing, he or she must so state in the written objection.  In all instances, the date appearing on the postmark shall be controlling for determining when an Objection was mailed.

Any Class Member who fails to comply with the provisions of this paragraph and the preceding paragraphs shall be deemed to have waived and forfeited any and all objections to the Settlement, can be barred from speaking or otherwise presenting views at the Final Fairness Hearing, and shall be bound by all the terms of the Agreement and by all proceedings, orders and judgments in the Litigation.

The parties will request that the court enter an order providing that the filing of an objection allows Class Counsel or Defendant's Counsel to notice the objecting person for and to take his or her deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection.  Failure by an objector to make him or herself available for a deposition or to comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person opportunity to be heard.  The Court may tax the

costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for any improper purpose. These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member's objection to the Settlement, in accordance with the due process rights of all Class Members.

**4.06   Entry of Order Granting Final Approval.**  At the time the Court considers the Order Granting Preliminary Approval, the Parties will request that the Court set the Final Fairness Hearing for December 8, 2016, which is more than ninety (90) days after Defendant's last day to issue CAFA Notice pursuant to paragraphs 2.14 and 4.02 above.  At the Final Fairness Hearing, the Parties will request that the Court, among other things: (a) enter an Order Granting Final Approval in accordance with this Agreement; (b) certify a Settlement Class; (c) approve the Agreement as final, fair, reasonable, adequate and binding on all Class Members; and (d) enjoin any Class Member who has not opted out from bringing any proceeding in any other court.  In addition, at the Final Fairness Hearing, Class Counsel shall petition the Court for an award of attorneys' fees and costs as set forth above.

**4.07   Effect of Failure to Enter Order Granting Final Approval of Settlement and Defendant's Right to Set Aside Settlement.**  In the event the Court fails to enter an Order Granting Final Approval in accordance with all of the terms of this Agreement, or the Order Granting Final Approval does not for any reason become Final as defined herein, the Parties shall proceed as follows:

A.   If the Court declines to enter the Order Granting Final Approval as provided for in this Agreement, the Litigation will resume unless the Parties mutually agree within thirty (30) days to: (1) Seek reconsideration or appellate review of the decision denying entry of the Order Granting Final Approval; or (2) Attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

B.   In the event the Parties seek reconsideration and/or appellate review of the decision denying entry of the Order Granting Final Approval and such reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.

C.   It shall not be deemed a failure to enter the Order Granting Final Approval for the Court to deny, all or in part, the attorneys' fees, service awards, and cost award requested by Class Counsel.  In such case, this Agreement shall be deemed valid and enforceable, notwithstanding the Court's order awarding less than the requested amount of attorneys' fees, service awards, and costs.  However, Class Counsel shall retain all rights of appellate review to such an order.

Prior to the time that the Order Granting Final Approval becomes Final, NNA shall also have the right to set aside or rescind this Agreement and recover all attorneys' fees paid (if any), in its sole discretion, within 30 days of the occurrence of any of the following events:

1.   More than 100 potential Class Members opt out;

2.   An opt-out class is certified; or

3.   There are any modifications to this Agreement or related documents by any court, or by any tribunal, agency, entity, or person.

If the Court fails to enter an Order Granting Final Approval in accordance with all of the terms of this Agreement, or the Order Granting Final Approval does not for any reason become Final, or the Defendant exercises its discretion to set aside the Settlement, this Agreement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission or confession by the Parties of any fact, matter, or proposition of law, and shall not be used or admissible in any manner for any purpose, and all parties to the Litigation shall stand in the same position as existed on July 1, 2016, and as if this Agreement had

not been negotiated, made, or filed with the Court.  In such event, the parties to the Litigation shall move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement.

## SECTION 5

## <u>RELEASE AND COVENANT NOT TO SUE</u>

**5.01   Release and Covenant Not to Sue.**   Regardless of whether Class Members make claims under this Settlement, the Order Granting Final Approval will dismiss all claims by Class Members with prejudice and will, with the exception of claims for personal injury, subordination, property damage not herein described, and/or wrongful death, forever release, remise, acquit, satisfy and discharge Defendant, Nissan North America, Inc., and all of its current and former parent corporations, subsidiaries, divisions, affiliated and related entities, stockholders and directors, and each of their independent authorized dealers, fiduciaries, administrators, executors, directors, officers, members, affiliates, employees, agents, representatives, attorneys, insurers, trustees, conservators, successors-in-interest and assigns as applicable and without limitation, from any and all manner of actions, cause and causes of action, accounts, agreements, bills, bonds, claims, contracts, controversies, versants, damages, debts, demands, dues, executions, judgments, liability, liens, proceedings, promises, reckonings, specialties, suits, sums of money, trespasses and variances whatsoever and any equitable, legal and administrative relief, whether based on federal, state or local law, statute or ordinance, regulation, contract, common law, or any other source including any claims relating to federal or state law, known or unknown, that have been or could have been raised in this case or any other litigation or proceeding, whether before a court, administrative or governmental body or agency, tribunal, or arbitration panel, that relate in any way to the subject matter of this litigation including, by way of example but not limited to, any and all claims concerning any alleged defect in the dashboard, denial of warranty coverage for the dashboard, or

alleged failure to disclose or misrepresentation concerning the dashboard, or similar claims.

Regardless of whether Class Members make claims under this Settlement, upon entry of the Order Granting Final Approval, Plaintiffs and each Class Member expressly agree that they, acting individually or together, shall not institute, maintain, prosecute, sue or assert in any litigation or proceeding in any court, administrative or governmental body or agency, tribunal, or arbitration panel, any action and actions, cause and causes of action, claims, controversies, demands, or suits against NNA arising out of or related in any way, in whole or in part, to any claims relating to federal or state law, known or unknown, concerning any alleged defect in the dashboard, denial of warranty coverage for the dashboard, alleged failure to disclose or misrepresentation concerning the dashboard, or similar claims, that have been or could have been raised in this case or any other litigation or proceeding in this or any other court, administrative or governmental body or agency, tribunal, or arbitration panel including, by way of example but not limited to, any and all claims.  Excluded from this paragraph are any such suits, arbitrations, claims, proceedings or actions involving claims for personal injury, property damage not herein described and/or wrongful death.

The proposed Order Granting Final Approval to be submitted to the Court will include, among other things, the release and covenant-not-to-sue terms as set forth in this Agreement and all the provisions set forth above.  The Parties agree to submit a joint proposed Order Granting Final Approval to the Court at a reasonable time before the hearing on the Order Granting Final Approval.  The Parties agree to work together and cooperate on drafting such a proposed order including making any changes necessary or appropriate in light of any ruling of the Court.

**5.02    Waiver of all Claims.**

Plaintiffs and NNA stipulate and agree that, upon Final Approval, all Class Members shall be deemed to have, and by operation of the Final Approval shall have, expressly waived and relinquished, to the fullest extent permitted by law, the

17

provisions, rights and benefits of Section 1542 of the California Civil Code to the extent it is applicable (or any other similar provision under federal, state or local law to the extent any such provision is applicable), which is quoted below.  Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Thus, subject to and in accordance with the provisions of this Settlement, even if NNA, Plaintiffs, or Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of any and all claims that they have released, upon Final Approval, they shall be deemed to have and by operation of the Final Approval shall have, fully, finally, and forever settled and released any and all claims of any kind between NNA, Plaintiffs, and Class Members related to this Litigation.  This is true whether claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Member expressly waives any and all rights under any other federal or state statute or law of similar effect with respect to the subject matter of this Litigation.

**5.03   Defendant's Reservation To Collect Debts**

Nothing herein shall preclude any action to enforce the terms of this Agreement.  Furthermore, nothing in this Agreement is intended in any way to affect Defendant's rights to collect any outstanding debt or other amounts owed to them by Class Members, all of said rights being expressly reserved.

**SECTION 6**

**MISCELLANEOUS PROVISIONS**

**6.01   Cooperation Between the Parties.**  The Parties shall cooperate fully with each other and shall use their best efforts to obtain Court approval of this Agreement and all of its terms.

**6.02   Entire Agreement**.  No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants referenced in this Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.03   Modification of Agreement.**  No waiver, modification or amendment of the terms of this Agreement, made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by Class Counsel and Defendant's Counsel, and then only to the extent set forth in such written waiver, modification or amendment, and subject to any required Court approval.

**6.04   Construction of Agreement.**  The Parties acknowledge as part of the execution hereof that this Agreement was reviewed and negotiated by their counsel and agree that the language of this Agreement shall not be presumptively construed against any of the Parties hereto.  This Agreement shall be construed as having been drafted by all the Parties to it, so that any rule of construction by which ambiguities are interpreted against the drafter shall have no force and effect.

**6.05   Arms' Length Transaction.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the active assistance of Mediator Michael Siboni.

**6.06   Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class and their respective heirs, successors and assigns.

**6.07   Waiver.**  Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**6.08   When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution by Defendant's Counsel and Class Counsel.  The Parties may execute this Agreement in counterparts, and execution in one or more counterparts shall have the same force and effect as if all Parties had signed the same instrument.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, the remaining provisions of this Agreement shall remain enforceable.  However, Plaintiffs and NNA shall each retain the right to seek from the Court, under its continuing jurisdiction as set forth below in paragraph 6.11, an appropriate order to address the ramifications of any order of a court of competent jurisdiction holding a provision of this Agreement to be unenforceable.

**6.09   No Third Party Beneficiaries.**  This Agreement shall not be construed to create rights in, or to grant remedies to, or delegate any duty, obligation or undertaking established herein to any third party as a beneficiary to this Agreement.

**6.10   Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall

have no effect upon the construction or interpretation of any part of this Agreement.

**6.11   Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement.

**6.12   Electronic Signatures.**  Any party may execute this Agreement by signing their name on the designated signature block below, and transmitting that signature page electronically to all counsel.  Any signature made and transmitted electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement, and shall be binding upon the Party transmitting their signature electronically.

**6.13   Commitment to Support by Parties.**  Plaintiffs, Class Counsel, Defendant NNA and Defendant NNA's Counsel agree to recommend approval of and to support this Settlement Agreement to the Court and to undertake their best efforts, including all reasonable steps contemplated by this Settlement Agreement, to give force and effect to its terms and conditions.  NNA shall have no obligation to affirmatively support an award of attorney's fees, but as explained in detail above shall not oppose a request for fees and costs.  Neither Plaintiffs, Class Counsel, NNA, nor Defendant NNA's Counsel shall in any way encourage any objections to this Settlement Agreement (or any of its terms or provisions) or encourage any Class Members to elect to opt out.

**6.14   Publicity**.  If contacted by the press, each Party will immediately notify the other Party and provide the press/media with the name and telephone number of a contact person for the other Party and refer the press/media to the materials filed with the Court and any orders entered by the Court.  Neither Class Counsel, Plaintiffs, Defendant's Counsel nor NNA nor their representatives will contact the press/media seeking publicity concerning this Litigation or Settlement.

**6.15   Exhibits.**  Any exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of any exhibits are expressly made a part of this Agreement.

**6.16   Cessation of Litigation Activity.**  Plaintiffs and the Settlement Class agree not to initiate any additional litigation against Defendant relating to, arising out of, or related in any way, in whole or in part, to any claims relating to federal or state law, known or unknown, that have been or could have been raised in this case or any other litigation or proceeding in this or any other court, administrative or governmental body or agency, tribunal, or arbitration panel.  Immediately upon execution of this Agreement, Plaintiffs, the Settlement Class, and NNA agree to cease all litigation activity in the Litigation (other than any activity to implement this Agreement) and to request the Court to stay all matters until each of the conditions precedent to the Agreement are complete, and consummation of the Settlement provided for herein has been satisfied or waived.  Any consumer who properly excludes himself or herself from the Settlement Class is not subject to this paragraph.

**6.17   Confidential Discovery Materials**.   Within 30 days of Final Approval, Plaintiffs' Counsel shall return to NNA's Counsel, or shall provide to counsel a certification under oath of the destruction of: (1) all matter produced in discovery in the Litigation that was designated as "Confidential" or "Subject to Protective Order"; (2) all depositions except for the depositions of Class Plaintiffs and Plaintiffs' experts not marked Confidential.

**6.18   Class Certification.**  If, for any reason, the Settlement provided for herein is not approved by the Court in complete accordance with the terms of the Settlement (unless the only modification is a reduction in the fees or costs awarded to Class Counsel) or does not become subject to Final Approval, then no class will be deemed certified by or as a result of this Agreement, and the Litigation for all purposes will revert to its status as of July 1, 2016.  In such event, Defendant will not be deemed to have consented to certification of any class, and will retain all

rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case, including, but not limited to, contesting certification of the identical Class provided for herein.

**6.19 Dismissal.** Upon Final Approval, the Court shall dismiss the Litigation with prejudice.

DATED: July 12 2016        JENNER & BLOCK LLP

Peter Brennan

*Attorneys for Defendant Nissan North America, Inc.*

DATED:                  Gibbs Law Group  LLP

Eric H. Gibbs

*Attorneys for Plaintiffs Tracy Sanborn and Louis Lucrezia*

DATED: July 12, 2016      Greg Coleman Law PC

Greg Coleman

*Attorneys for Plaintiffs Tracy Sanborn and Louis Lucrezia*

DATED:                  Morgan & Morgan PA

John A. Yanchunis

*Attorneys for Plaintiffs Tracy Sanborn and Louis Lucrezia*

23